**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In Re:  ANTHONY BRIATICO                                      Case No. 17-12186        CGM

**AMENDED**
**CHAPTER 13 PLAN**

Debtor

SSN xxx-xx-5515        SSN xxx-xx-n/a

-------------------------------------------------------------------x

**PART 1. DEFINITIONS AND NOTICES**

**1.1 Plan Definitions**: If this is a joint case, use of the term "Debtor" shall also mean Debtors. The term "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure. The term "Form Plan" refers to this court's Local Chapter 13 Model Plan. The term "Local Rule" shall refer to the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Southern District of New York.  The term "Petition" refers to Debtor's bankruptcy petition filed with the Court on August 6, 2017. The term "Plan" refers to this chapter 13 plan. The term "Real Property Used as a Principal Residence" includes cooperative apartments. The term "Trustee" shall always refer to the Chapter 13 Standing Trustee for this Court, or the substitute therefor.

**1.2 Debtor must check one box on each line to state whether or not the Plan includes each of the following items. If an item is checked "does," the Debtor must serve this Plan on any affected party in interest pursuant to Bankruptcy Rule 7004.  Failure to serve the Plan pursuant to Bankruptcy Rule 7004 whenever required may render the provision  ineffective.  If an item is checked as "does not" or if both boxes are checked, the provision will be ineffective if set out later in the Plan.**

In accordance with Bankruptcy Rule 3015.1, this Plan:

☒ does / ☐ does not contain any nonstandard provision (See Part 8 herein for any non-standard provision);

☐ does / ☒ does not limit the amount of a secured claim based on valuation of the collateral for the claim (See Part 3 herein);

☐ does / ☒ does not avoid a security interest or lien (See Part 3 herein);

☐ does / ☒ does not request loss mitigation (See Part 8 herein).

**1.3 Notice to Debtor:** This Form Plan sets out options that may be appropriate in some cases, but the presence of an option on the Form Plan does not indicate that the option is appropriate in your circumstances. To be confirmable, this Plan must comply with the Bankruptcy Code, the Bankruptcy Rules, judicial rulings, and the Local  Rules.

☐ By checking this box, Debtor acknowledges that he/she is not eligible for a discharge pursuant to 11 U.S.C. § 1328(f).  [Prior Case number:                  petition date: Click or tap to enter a date.

discharge date in prior case: Click or tap to enter a date.                                ].

*If checked, the Debtor shall submit an* order *denying discharge upon confirmation of the Plan or the Court's separate  determination of the request, whichever is earlier.*

☒ This is an Amended or Modified Plan. The reasons for filing this Amended or Modified Plan are:

to add the sale of the debtor's property to this plan for the repayment of the debts in this case, add the amounts of priority tax debt and add non-standard provisions related to the sale of real estate in this case.

**1.4 Notice to Creditor**s: If you oppose the Plan's treatment of your claim **or any provision of  this Plan**, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. This includes objections to valuations of  collateral, motions to avoid junior mortgage and judicial liens, and surrender provisions.

Pursuant to Bankruptcy Rule 3015(g), "any determination in the Plan made under [Bankruptcy] Rule 3012 about the amount of a secured claim is binding on the holder of the claim, even if the holder files a contrary proof of claim or the Debtor schedules that claim [differently], and regardless of whether an objection to the claim has been filed."

This Plan shall be binding upon its confirmation. You should read this Plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one who practices bankruptcy law.

The Bankruptcy Court may confirm this Plan without further notice if no objection is filed. *See* Bankruptcy Rule 3015.

## PART 2: PLAN PAYMENTS AND DURATION

**2.1** The Debtor's future earnings are submitted as provided in the Plan to the supervision and control of the Trustee. Debtor will make the first Plan payment no later than thirty (30) days after the date the Petition was filed. The Debtor shall make [ 60 ] monthly payments to the Trustee as follows:

| Amount | How Many Months? |
|--------|------------------|
| $400 | 60 |
| $ | |

☐ Debtor's annual commitment period is 36 months and Debtor moves to extend to 60 months for the following reasons: (*check all that apply*)

☐ Debtor is not able to propose a feasible plan in a period of less than 60 months. Debtor's proposed monthly payment will constitute an affordable budget that the Debtor will be able to maintain.

☐ Payments greater than that proposed by this Plan for 60 months would create an economic hardship for the Debtor.

☐ Creditors will not be prejudiced by this application for extension of Debtor's Plan payments from 36 to 60 months.

### 2.2 Regular payments
Regular Plan payments to the Trustee will be made from future income in the following manner:
*Check all that apply*

☒ Debtor will make payments directly to the Trustee.

☐ Debtor will make payments through any entity from whom the Debtor receives income, pursuant to a payroll deduction order 11 U.S.C. § 1325(c). Upon checking the box for a payroll deduction order, Debtor *shall submit to the Court a separate order* directing Debtor's employer to deduct the Plan payments from Debtor's wages. Debtor also agrees to notify the Trustee immediately upon change or termination of employment.

☐ Non-Debtor contributor will make the following monthly payments to the Trustee:

| Amount | How Many Months? |
|--------|------------------|
| $ | |
| $ | |

### 2.3 Income Tax Refunds
All future tax refunds in excess of $1500 per individual Debtor (less any cash exemptions in the Plan's first year, if applicable) **shall be paid to the Trustee** for the duration of the Plan. The Debtor shall provide the Trustee with all income tax returns through the full performance of the Plan.

### 2.4 Irregular Payments   *Check one.*

☒ None. If "None" is checked, the rest of subsection 2.4 need not be completed or reproduced.

☐ ☐ Debtor will make irregular payment(s) to the Trustee from other sources, as specified below.

| Source | Estimated Amount | Date of Payment (Anticipated) |
|--------|------------------|-------------------------------|
| | $ | Click or tap to enter a date. |

### 2.5 Payment Terms
The Debtor will pay the amounts payable to the Trustee by electronic transfer of funds or bank check, certified check, teller's check, or money order sent directly to the Chapter 13 Trustee. See http://www.nysb.uscourts.gov/chapter-13-plan-information

## PART 3: TREATMENT OF SECURED CLAIMS
**3.1 Definitions:** For the purposes of this subsection, any reference to the term "Secured Creditor" means lienholder

mortgagees, a creditor whose interest is secured by a mortgage on Debtor's real property, including Real Property Used as a Principal Residence; a holder and/or authorized servicer of a claim secured by a lien, mortgage and/or deed of trust; and/or any other similarly situated creditor, servicing agent and/or their assigns. The term "Lien" shall include references to mortgages, liens, deeds of trust and any other similarly situated interests in the Debtor's real or personal property. The term "Prepetition Arrearages" shall refer to an outstanding monetary default with respect to, or that gave rise to, a Lien prior to the Petition date. The term "Post-Petition Payment" means payment that first becomes due and payable by the Debtor to the Secured Creditor after the filing of the Petition.

**3.2 Maintenance of payments and cure of default, if any.**
*Check one.*
☐ None
☒ The Debtor will maintain the current contractual installment payments on the secured claims listed below with any changes required by the applicable contract and noticed in conformity with applicable rules. These payments will be disbursed directly by the Debtor. The Debtor shall keep a complete record of all Debtor's payments under the Plan. However, any existing Prepetition arrearage on a timely filed secured claim will be paid in full through disbursements by the Trustee, with interest, if any, at the rate stated below. Confirmation of this Plan shall impose an affirmative duty on the Secured Creditor and Debtor to do all the following as ordered:

**(a) Post-Petition Payments.**
Debtor shall pay the following Post-Petition payments directly to the Secured Creditor listed below during the pendency of the Plan:

| Secured Creditor & Property Description | Payment Amount | Payment Timing | Address Where Post Petition Payments Will be Sent |
|---|---|---|---|
| MTGLQ Investors, LP<br><br>433 W. 34th Street, Apt. 13H<br>New York, NY 10001 | $1,679 | Monthly | Rushmore Loan Management Services<br>P.O. Box 52708<br>Irvine, CA 92619-2708 |

**(b) Prepetition Arrearages.**
　　(i) For purposes of this Plan, Prepetition Arrearages shall include all sums included in the allowed secured claim and shall have a "0" balance upon entry of the discharge order in this case. In the event that a Secured Creditor listed in this section fails to timely file a proof of claim in this case, the Debtor may file a claim on the Secured Creditor's behalf, pursuant to 11 U.S.C. § 501(c), before the applicable bar date.
　　(ii) No interest will be paid on Prepetition Arrearages unless otherwise stated herein.
　　(iii) Payments made by the Trustee on Debtor's Prepetition Arrearages shall be applied only to those Prepetition Arrearages and not to any other amount owed by Debtor to the Secured Creditor.
　　(iv) Information Regarding Prepetition Arrearages:

| Secured Creditor | Property Description | Property Address | Value of Collateral | Valuation Method | PrePetition Arrearage Amount | Arrearage Owed as of Date |
|---|---|---|---|---|---|---|
| MTGLQ Investors, LP | A residential co-op unit | 433 W. 34th Street, Apt. 13H New York, NY 10001 | $645,000 | Broker's Price Opinion | $67,373.25 | August 6, 2017 |
| | | | $ | | $ | August 6, 2017 |

　　(v) If the Trustee pays the amount(s) specified in Part 3.2(b) (iv) (above), and the Debtor makes all required Post-Petition Payments as specified in Part 3.2(a), any default with respect to a Lien, including a Lien on Real Property Used as a Principal Residence will be cured, extinguishing any right of the Secured Creditor to recover any amount alleged to have arisen prior to the filing of Debtor's Petition.

**(c) Adequate Protection.**
If applicable, adequate protection of a Secured Creditor's interest in property shall be provided as follows:
*[describe and provide the basis for calculation, or state not applicable]*

n/a

Any such payments shall be applied by the Secured Creditor to its allowed secured claim.

**(d) Return and/or Reallocation of Distribution Payment Made to Secured Creditor**.
If a Secured Creditor withdraws its claim, the sum allocated herein towards the payment of the Secured Creditor's claim shall be distributed by the Trustee to Debtor's remaining creditors, as provided herein. If the Secured Creditor has received monies from the Trustee (Distribution Payment) and returns those monies to the Trustee, the monies returned shall be distributed to the Debtor's remaining creditors, as provided herein. If this Plan repays creditors in full, then such returned monies will be paid to the Debtor.

### 3.3 Surrender

*Check one. If you check a box other than "None" you will have to serve this Plan pursuant to Bankruptcy Rule 7004.*
    ☐ None.
    ☐ Debtor surrenders the following property and upon confirmation of this Plan or as otherwise ordered by the Court, bankruptcy stays are lifted for all purposes as to the collateral to be surrendered. Every Secured Creditor with a Lien on surrendered property shall file a deficiency claim within 60 days of notice of such surrender if it disagrees with the Plan's statement of the deficiency claim below. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 6 below.

**(a) If the property being surrendered is real property located in New York State, check one of the following boxes.**

    Upon confirmation, Debtor intends to:
        (i) ☐ Cease making payments to the Claimant and continue residing at the Property until a court orders Debtor to vacate
        (ii) ☐ Vacate the premises and make Claimant liable for all maintenance on the Property, pursuant to New York RPAPL §1308.

| Claimant | Property to be Surrendered | Value of Collateral | Amount of Deficiency Claim to be Paid as Unsecured |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |

### 3.4 Wholly unsecured Liens

*Check one. If you check a box other than "None" you will have to serve this Plan pursuant to Bankruptcy Rule 7004.*
    ☒ None.
    ☐ Debtor requests that the Court value the collateral in the amount listed below, avoid the following Liens as wholly unsecured, and reclassify any timely claim filed as unsecured. As stated in Bankruptcy Rule 3012(c): "Request to determine amount of <u>government's</u> secured claim must be by motion or in a claim objection <u>after</u> the government files a proof of claim or after the time for filing a claim expires." *Attach appraisal of property to this Plan. The Debtor shall submit an order avoiding the Lien upon confirmation of the Plan or the Court's separate determination of the request whichever is earlier.*

| Creditor Name | Collateral Description | Collateral Value | Lien Identification | Amount of Senior Lien |
|---|---|---|---|---|
|  |  | $ |  | $ |
|  |  | $ |  | $ |

### 3.5 Request for valuation of security/Bifurcation of Liens  *[Not applicable to Real Property Used as a Principal Residence or property listed under Section 3.6 of this Plan]. Check one. If you check a box other than "None" you will have to serve this Plan pursuant to Bankruptcy Rule 7004.* As stated in Bankruptcy Rule 3012(c): "Request to determine amount of <u>government's</u> secured claim must be by motion or in a claim objection <u>after</u> the government files a proof of claim or after the time for filing a claim expires."
    ☒ None.
    ☐ The Debtor requests that the court determine the value of the secured claims listed below. The portion of any

Revised 12/1/2017

allowed claim that exceeds the amount of the collateral securing the claim will be treated as an unsecured claim under Part 6 of this Plan. The holder of any claim listed below as having value in the column headed "*Amount of secured claim*" (a) will retain its Lien on the property of the estate until such time as the earlier of (i) payment in full, or (ii) the Plan is performed; and (b) will retain its Lien on non-estate property. *Attach appraisal of property as an exhibit to this Plan. The Debtor shall submit an order voiding the Lien upon confirmation of the Plan or the Court's separate determination of the request, whichever is earlier.*

| Creditor Name, Property Address, & Description | Amount of Senior Liens After Value of Collateral | Value of Collateral | Debt Amount Outstanding | Amount Secured Claims | At interest rate | Trustee shall pay arrearages in Amount |
|---|---|---|---|---|---|---|
|  | $ | $ | $ | $ | % | $ |
|  | $ | $ | $ | $ | % | $ |

## 3.6 Secured Claims excluded from 11 U.S.C. § 506

*Check one.*

☒ None.

☐ The claims listed below were either: (1) incurred within 910 days before the Petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the Debtor; or (2) incurred within 1 year of the Petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under the Plan with interest at the rate stated below. These payments will be disbursed either by the Trustee or directly by the Debtor, as specified below. The final column indicates payments to be disbursed only by the Trustee rather than by the Debtor.

| Creditor Name | Collateral | Claim Amount | Monthly Plan Payment | Interest Rate | Payment Disbursed by Trustee or Debtor | Total Payment by Trustee |
|---|---|---|---|---|---|---|
|  |  | $ | $ | $ | Choose an item. | $ |
|  |  | $ | $ | $ | Choose an item. | $ |

## 3.7 Judicial Lien Avoidance

*Check one. If you check a box other than "None" you will have to serve this Plan pursuant to Bankruptcy Rule 7004.*

☒ None.

☐ Entire Lien is avoided. Any timely filed claim by Claimant shall be an unsecured claim in the amount of $

☐ A portion of the Lien is avoided. Any timely filed claim of Claimant shall be a secured claim in the amount of $         at interest rate of         % and an unsecured claim in the amount of $        .

Calculation of Lien Avoidance

| Claimant Name | Collateral | Value of Debtor Interest in Property (attach appraisal as exhibit to this Plan) | Nature of Exemption | Value of Exemption Claimed on Schedule C | Lien Identification | Amount of all Liens with Priority over this Lien | Remaining Equity Securing Lien |
|---|---|---|---|---|---|---|---|
|  |  | $ |  | $ |  | $ | $ |
|  |  | $ |  | $ |  | $ | $ |

**The Debtor shall submit an order voiding the Lien upon confirmation of the Plan or the Court's separate determination of the request, whichever is earlier. http://www.nysb.uscourts.gov/chapter-13-information**

### 3.8 Miscellaneous Provisions

(i) Secured Creditors with a security interest in the Real Property Used as a Principal Residence shall comply with all provisions of Bankruptcy Rule 3002.1.

(ii) If relief from the automatic stay is ordered as to any item of collateral listed in this Part, then, unless otherwise ordered by the Court, all timely filed secured claims based on a Lien on that collateral will no longer be treated by the Plan and all payments under this Part of the Plan on such secured claims shall cease.

## PART 4 TREATMENT OF FEES AND PRIORITY CLAIMS

### 4.1 General

Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in subsection 4.5, will be paid in full without post-Petition interest.

### 4.2 Trustee's fees

Trustee's fees will be no more than 10% of Plan payments.

### 4.3 Attorney's fees

Counsel for the Debtor has received a Prepetition flat fee to be applied against fees and costs incurred. Fees and costs exceeding the flat fee shall be paid from funds held by the Trustee as an administrative expense after application to and approval by the Court, pursuant to 11 U.S.C. § 330(a)(4) and Bankruptcy Rule 2016.

Total Amount of flat fee charged: $5,000 (subject to review under 11 U.S.C § 329).
Amount of flat fee paid Prepetition: $5,000
Remainder of flat fee to be paid through Plan, if any: $0.00

### 4.4 Unsecured Domestic Support Obligations.

Debtor shall remain current on all such obligations that come due after filing the Petition. Unpaid obligations incurred before the Petition date are to be cured by the following Plan payments.

| Creditor Status (e.g. child, spouse, former spouse, domestic partner) | PrePetition Arrearages |
|---|---|
| Former Spouse | $54,453.23 |
| | $ |

### 4.5 Other Unsecured Priority Claims, including Unsecured Tax Claims.

| Creditor Name | Type of Priority Debt | PrePetition Arrearages |
|---|---|---|
| New York State Department of Taxation and Finance | Unsecured Priority Claim | $2,284.98 |
| Internal Revenue Service | Unsecured Priority Claim | $8,236.94 |

## PART 5 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Pursuant to 11 U.S.C. § 1322(b), Debtor assumes or rejects the following unexpired lease(s) or executory contract(s). For any assumed executory contract or unexpired lease with an arrearage to cure, the arrearage will be cured in the Plan with regular monthly payments to be paid directly to the contract party by the Debtor. The cure amount will be as set forth below, unless an objection to such amount is filed, by the date to object to confirmation to the Plan, in which event, the cure amount shall be fixed by the Court. *If the Plan provides for the assumption or rejection of a contract or unexpired lease, it must be served on the other party to the agreement under Bankruptcy Rule 7004.*

### 5.1   Assumed

| Creditor Name | Address & Property Description | Cure Amount | Cure Calculated Through Date |
|---|---|---|---|
| 433 West 34th Street Owners Corp. | Coop Lease for 433 W. 34th Street, Apt. 13H New York, NY 10001 | $0.00 | 8/6/2017 |
| | | $ | Click or tap to enter a date. |

Revised 12/1/2017

**5.2 Rejected**

| Creditor Name | Address & Property Description | Arrearage Amount | Arrearage Through Date |
|---|---|---|---|
| n/a | | $ | Click or tap to enter a date. |
| | | $ | Click or tap to enter a date. |

**5.3 Post-Petition Payments for Assumed Executory Contracts and Unexpired Leases.**
Debtor shall make the following Post-Petition Payments directly to the Creditor:

| Creditor Name | Address & Property Description | Payment Amount | Payment Timing |
|---|---|---|---|
| 433 West 34th Street Owners Corp. | Coop leas for 433 W. 34th Street, Apt. 13H New York, NY 10001 | $1,100 | Monthly |
| | | $ | |

## PART 6 NONPRIORITY, UNSECURED CLAIMS

**6.1 Allowed nonpriority, unsecured claims shall be paid *pro rata* from the balance of payments made under this Plan.**

**6.2 Separately classified nonpriority unsecured claims**

*Check one.*

☒ None.

☐ The nonpriority unsecured allowed claims listed below are separately classified and will be treated as follows:

| Creditor Name | Basis for separate classification and treatment | Amount to be paid on the claim | Current Installment Payment |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |

## PART 7 MISCELLANEOUS

**Debtor must comply with all the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, including, but not limited to, those found in 11 U.S.C. § 521 and Bankruptcy Rules 2015 and 4002, where applicable. This includes a duty to file tax returns and, in certain circumstances, operating reports. Additional information that is useful for filling out this Plan, serving the Plan, and completing the chapter 13 process is available here: http://www.nysb.uscourts.gov/chapter-13-plan-information**

## PART 8 LOSS MITIGATION AND NONSTANDARD PROVISIONS

**8.1 Any nonstandard provision must be entered here. If this Part conflicts with any earlier Part except Part 1.2, this Part controls.**

**8.2 Loss Mitigation:**

☐ By checking this box and completing this section, the Debtor requests loss mitigation pursuant to Local Rule 9019-2, which governs a court-ordered loss mitigation program, pursuant to which parties may deal with issues such as a loan modification, loan refinance, short sale, or surrender in full satisfaction, concerning the Debtor's Real Property Used as a Principal Residence. *[Identify the property, loan and creditor for which you are requesting loss mitigation]*

The Debtor estimates the value of the Real Property used as Principal Residence to be $
The Debtor hereby permits the Secured Creditor(s) listed above to contact (*check all that apply*):

    ☐ The Debtor directly.

    ☐ Debtor's bankruptcy counsel.

    ☐ Other:

Debtor is not required to dismiss this bankruptcy Petition during the loss mitigation discussions. *The Debtor shall submit an order granting loss mitigation if no objections are received within the requisite notice period. See* http://www.nysb.uscourts.gov/loss-mitigation

**8.3 Sale and Credit Bidding of Real Property.**

☒ By checking this box, Debtor intends to sell Real Property having an address of 433 W 34th Street, Apt. 13H, New York, NY 10001 pursuant to 11 U.S.C. § 363(b). The Real Property is subject to a secured claim held by MTGLQ Investors, LP. Attached to this Plan is the contract of sale, in which April J. Seigel has agreed to pay $645,000 for the collateral. Attach as an exhibit to the Plan the sale contract and any evidence supporting request for relief under 11 U.S. C. § 363(f) and/or (m). Pursuant to 11 U.S.C. § 363(k), the Secured Creditor, MTGLQ Investors, LP may assert its right to credit bid as part of a timely objection to confirmation and submit a higher and better offer by a time set by the Court. Debtor shall attach an affidavit containing all facts necessary for Court to approve the sale and should be prepared to address the requirements of 11 U.S.C. § 363 at the confirmation hearing. The Debtor shall submit an order approving sale upon confirmation of the Plan or the Court's separate determination of the request, whichever is earlier.

**8.4 Surrender in Full Satisfaction**

☐ By checking this box, Debtor surrenders the following property in full satisfaction of the Secured Creditor's debt. *Attach appraisal or other evidence of the property's value as an exhibit to this Plan.*

**8.5 Surrender and Vesting**

☐ By checking this box, title to any collateral surrendered in this Plan automatically vests in the Name of Secured Creditor upon confirmation and the lifting of the automatic stay. Creditor has 60 days from the date of such order to file a deficiency claim. *The Debtor shall submit an order surrendering the collateral and vesting title in the creditor upon confirmation of the Plan or the Court's separate determination of the request, whichever is earlier.*

**8.6   Additional Non-Standard Provisions**

None.

## PART 9 DEBTOR'S SIGNATURE

**Dated: December 11, 2017, New York**

| | |
|---|---|
| /s/ Anthony J. Briatio<br><br>Debtor | Joint Debtor |
| Anthony J. Briatico<br>Debtor Address 433 W. 34th Street, Apt. 13H, New York, NY | Joint Debtor Address |

### PART 10 DEBTOR'S ATTORNEY'S SIGNATURE

| | |
|---|---|
| /s/Norma E. Ortiz | December 11, 2017 |
| Attorney for Debtor | Date |

Firm Name Ortiz & Ortiz, LLP
Attorney Street Address 32-72 Steinway Street, Suite 402           Attorney Telephone (718) 522-1117
Attorney City, State Zip Code Astoria, New York 11103           Attorney Email email@ortizandortiz.com

## PART 11 CERTIFICATION

I, the undersigned attorney for the Debtor or Pro se Debtor, hereby certify that the foregoing Plan conforms to the pre-approved Form Plan pursuant to Local Rule 3015-1 of the United States Bankruptcy Court for the Southern District of New York and contains no nonstandard provisions other than those set out in Part 8.

| | |
|---|---|
| /s/Norma E. Ortiz | 12/11/2017 |
| Attorney for Debtor of *Pro Se* Debtor | Date |

# Contract of Sale

123 - Contract of sale cooperative apartment, 7-01
Prepared by The Committee on Condominiums and Cooperatives of the Real Property Section of the New York State Bar Association

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

*27.*

### Contract of Sale - Cooperative Apartment

This Contract is made as of October , 2017          between the "Seller" and the "Purchaser" identified below.

**1 Certain Definitions and Information**
1.1 The "Parties" are:
    **1.1.1 "Seller": ANTHONY JAMES BRIATICO**

Prior names used by Seller:

Address:  **433 West 34th Street**
        **New York, NY 10001**

S.S. No.
    **1.1.2 " Purchaser": APRIL J. SIEGEL**

Address:  

S. S. No.:
1.2 The "Attorneys" are (name, address and telephone, fax):
    **1.2.1 "Seller's Attorney" Lori J. Braverman**
        **280 Riverside Drive**
        **New York, NY 10025**
        **(212) 721-7625 Phone & Fax**

        lori.braverman@gmail.com
    1.2.2 "Purchaser's Attorney"
        **Michelle L. Wexler**
        **Mavrides |Moyal |Packman Sadkin**
        **276 Fifth Avenue, Suite 404**
        **New York, NY 10001**
        **(646) 794-1577**

        mwexler@mmps.com

1.3 The "Escrowee" is the Seller's Attorney.

1.4 The Managing Agent is (name, address and telephone, fax):
    **Halstead Property**
    **770 Lexington Avenue**
    **New York, NY**

1.5 The real estate "Broker(s)" (see ¶ 12) is/are:
    **Thomas Hemann**

Company Name:  **Brown Harris Stevens**

1.6 The name of the cooperative housing corporation ("Corporation") is:
    **433 West 34th Street Owners Corp.**

1.7 The "Unit" number is: **1311**

1.8 The Unit is located in "Premises" known as:
**433 West 34th Street, New York, NY 10001**
1.9 The "Shares" are the 157 shares of the
Corporation allocated to the Unit.

1.10 The "Lease" is the Corporation's proprietary lease or occupancy
agreement for the Unit, given by the Corporation which expires on

1.11 "Personalty" is the following personal property, to the extent exist-
ing in the Unit on the date hereof: the refrigerators, freezers, ranges,
ovens, built-in microwave ovens, dishwashers, garbage disposal units,
cabinets and counters, lighting fixtures, chandeliers, wall-to-wall carpet-
ing, plumbing and heating fixtures, central air conditioning and/or
window or sleeve units, washing machines, dryers, screens and storm
windows, window treatments, switch plates, door hardware, mirrors,
built-ins not excluded in Paragraph 1. 12
**To the extent the foregoing currently exist**

1.12 Specifically excluded from this sale is all personal property not
included in ¶ 1.11 and:

1.13 The sale does not includes Seller's interest in
Storage, Servant's Rm Parking Space ("Included Interests") as no such
interests exist.
1.14 The "Closing" is the transfer of ownership of the Shares and Lease.
1.15 The date scheduled for Closing is on or about November 22, 2017
("Scheduled Closing Date") at        10:00      A .M (See ¶ 9 and 10)
1.16 The "Purchase Price" is: $ 645,000.00
    1.16.1 The "Contract Deposit" is: $64,500.00
    1.16.2 The "Balance" of the Purchase Price due at Closing is:
$580,500.00
    (See ¶ 2.2.2)
1.17 The monthly "Maintenance" charge is $1,221.60
    (See ¶ 4)
1.18 The "Assessment", if any, payable to the Corporation, at the date of
this Contract is $0.00,                                         payable as
follows:
1.19 N/A shall pay the Corporation's flip tax, transfer fee (apart from the
transfer agent fee) and/or waiver of option fee ("Flip Tax"), if any.
1.20 Financing Options (Delete two of the following ¶¶ 1. 20  1, 1.20.2
or 1.20.3)
1.20.1 Purchaser may apply for financing in connection with this sale and
Purchaser's obligation to purchase under this Contract is contingent upon
issuance of a Loan Commitment Letter by the Loan Commitment Date (¶
18.1.2).
    ~~1.20.2 Purchaser may apply for financing in connection with this~~
~~sale but Purchaser's obligation to purchase this Contract is not contingent~~
~~upon issuance of a Loan Commitment Letter.~~
    ~~1.20.3 Purchaser shall not apply for financing in connection with~~
~~this sale.~~
1.21 If ¶ 1.20. 1. or 1.20.2 applies, the "Financing Terms" for ¶ 18 are: A
loan of  $  100,000.00        for a term of  30   years or
such lesser amount or shorter term as applied for or acceptable to Pur-
chaser; and the "Loan Commitment Date" for ¶ 18 is 30
calendar days after the Delivery Date.

1.22 The "Delivery Date" of this Contract is the date on which a fully executed counterpart of this Contract is deemed given to and received by Purchaser or Purchaser's Attorney as provided in ¶ 17.3.

1.23 All "Proposed Occupants" of the Unit are:

1.23.1 persons and relationship to Purchaser:

Purchaser

1.23.2 pets: none

1.24 The Contract Deposit shall be held in an IOLA escrow account. If the account is a non-IOLA account then interest shall be paid to the Party entitled to the Contract Deposit. The Party receiving the interest shall pay any income taxes thereon. The escrow account shall be a segregated bank account at

Depository: Citibank

Address: 2350 Broadway
New York, NY 10024

(See ¶ 27)

1.25 This Contract is continued on attached rider.

## 2 Agreement to Sell and Purchase; Purchase Price; Escrow

2.1 Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, the Seller's Shares, Lease, Personalty and any Included Interests and all other items included in this sale, for the Purchase Price and upon the terms and conditions set forth in this Contract.

2.2 The Purchase Price is payable by Purchaser as follows:

2.2.1 the Contract Deposit at the time of signing this Contract, by Purchaser's good check to the order of Escrowee; and

2.2.2 the Balance at Closing, only by cashier's or official bank check or certified check of Purchaser payable to the direct order of Seller. The check(s) shall be drawn on and payable by a branch of a commercial or savings bank, savings and loan association or trust company located in the same City or County as the Unit. Seller may direct, on reasonable Notice (defined in ¶ 17) prior to Closing, that all or a portion of the Balance shall be made payable to persons other than Seller (see ¶ 17.7).

## 3 Personalty

3.1 Subject to any rights of the Corporation or any holder of a mortgage to which the Lease is subordinate, this sale includes all of the Seller's interest, if any, in the Personalty and the Included Interests.

3.2 No consideration is being paid for the Personalty or for the Included Interests; nothing shall be sold to Purchaser if the Closing does not occur.

3.3 Prior to Closing, Seller shall remove from the Unit all the furniture, furnishings and other property not included in this sale, and repair any damage caused by such removal.

## 4 Representations and Covenants

4.1 Subject to any matter affecting title to the Premises (as to which Seller makes no representations or covenants), Seller represents and covenants that:

4.1.1 Seller is, and shall at Closing be, the sole owner of the Shares, Lease, Personalty and Included Interests, with the full right, power and authority to sell and assign them. Seller shall make timely provision to satisfy existing security interest(s) in the Shares and Lease and have the same delivered at Closing (See ¶ 10.1);

4.1.2 the Shares were duly issued, fully paid for and are non-assessable;

4.1.3 the Lease is, and will at Closing be, in full force and effect and no notice of default under the Lease is now or will at Closing be in effect;

4.1.4 the Maintenance and Assessments payable as of the date hereof are as specified in ¶ 1.17 and 1.18;

4.1.5 as of this date, Seller neither has actual knowledge nor has received any written notice of any increase in Maintenance or any Assessment which has been adopted by the Board of Directors of the Corporation and is not reflected in the amounts set forth in ¶¶ 1.17 and 1.18;

4.1.6 Seller has not made any material alterations or additions to the Unit without any required consent of the Corporation or, to Seller's actual knowledge, without compliance with all applicable law. This provision shall not survive Closing.

4.1.7 Seller has not entered into, shall not enter into, and has no actual knowledge of any agreement (other than the Lease) affecting title to the Unit or its use and/or occupancy after Closing, or which would be binding on or adversely affect Purchaser after Closing (e.g. a sublease or alteration agreement);

4.1.8 Seller has been known by no other name for the past 10 years except as set forth in ¶ 1.1.1.

4.1.9 at Closing in accordance with ¶ 15.2:

4.1.9.1 there shall be no judgments outstanding against Seller which have not been bonded against collection out of the Unit ("Judgments");

4.1.9.2 the Shares, Lease, Personalty and any Included Interests shall be free and clear of liens (other than the Corporation's general lien on the Shares for which no monies shall be owed), encumbrances and adverse interests ("Liens");

4.1.9.3 all sums due to the Corporation shall be fully paid by Seller to the end of the payment period immediately preceding the date of Closing;

4.1.9.4 Seller shall not be indebted for labor or material which might give rise to the filing of a notice of mechanic's lien against the Unit or the Premises; and

4.1.9.5 no violations shall be of record which the owner of the Shares and Lease would be obligated to remedy under the Lease.

4.2 Purchaser represents and covenants that:

4.2.1 Purchaser is acquiring the Shares and Lease for residential occupancy of the Unit solely by the Proposed Occupants identified in ¶ 1.23

4.2.2 Purchaser is not, and within the past 7 years has not been, the subject of a bankruptcy proceeding;

4.2.3 if ¶ 1.20.3 applies, Purchaser shall not apply for financing in connection with this purchase.

4.2.4 Each individual comprising Purchaser is over the age of 18 and is purchasing for Purchaser's own account (beneficial and of record).

4.2.5 Purchaser shall not make any representations to the Corporation contrary to the foregoing and shall provide all documents in support thereof required by the Corporation in connection with Purchaser's application for approval of this transaction; and

4.2.6 there are not now and shall not be at Closing any unpaid tax liens or monetary judgments against Purchaser.

4.3 Each Party covenants that its representations and covenants contained in ¶ 4 shall be true and complete at Closing and, except for ¶ 4.1.6, shall survive Closing but any action based thereon must be instituted within one year after Closing.

## 5 Corporate Documents

Purchaser has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risk of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws, House Rules, minutes of shareholders' and directors' meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporation's shareholders under Internal Revenue Code ("IRC") §216 (or any successor statute).

## 6 Required Approval and References

6.1 This sale is subject to the unconditional consent of the Corporation.

6.2 Purchaser shall in good faith:

6.2.1 submit to the Corporation or the Managing Agent an application with respect to this sale on the form required by the Corporation, containing such data and together with such documents as the Corporation requires, and pay the applicable fees and charges that the Corporation imposes upon Purchaser. All of the foregoing shall be submitted within 15 business days after the Delivery Date, or, if ¶ 1.20.1 or 1.20.2 applies and the Loan Commitment Letter is required by the Corporation, within 7 business days after the earlier of (i) the Loan Commitment Date (defined in ¶ 1.2.1) or (ii) the date of receipt of the Loan Commitment Letter (defined in ¶ 18.1.2);

6.2.2 attend (and cause any Proposed Occupant to attend) one or more personal interviews, as requested by the Corporation; and

6.2.3 promptly submit to the Corporation such further references, data and documents reasonably requested by the Corporation.

6.3 Either Party, after learning of the Corporation's decision, shall promptly advise the other Party thereof. If the Corporation has not made a decision on or before the Scheduled Closing Date, the Closing shall be adjourned for 30 business days for the purpose of obtaining such consent. If such consent is not given by such adjourned date, either Party may cancel this Contract by Notice, provided that the Corporation's consent is

not issued before such Notice of cancellation is given. If such consent is refused at any time, either Party may cancel this Contract by Notice. In the event of cancellation pursuant to this ¶ 6.3, the Escrowee shall refund the Contract Deposit to Purchaser.

6.4 If such consent is refused, or not given, due to Purchaser's bad faith conduct, Purchaser shall be in default and ¶ 13.1 shall govern.

**7 Condition of Unit and Personalty; Possession**

7.1 Seller makes no representation as to the physical condition or state of repair of the Unit, the Personalty, the Included Interests or the Premises. Purchaser has inspected or waived inspection of the Unit, the Personalty and the Included Interests and shall take the same "as is", as of the date of this Contract, except for reasonable wear and tear. However, at the time of Closing, the appliances shall be in working order and required smoke detector(s) and carbon monoxide detector shall be installed and operable.

7.2 At Closing, Seller shall deliver possession of the Unit, Personalty and Included Interests in the condition required by ¶ 7. 1, broomclean, vacant and free of all occupants and rights of possession.

**8 Risk of Loss**

8.1 The provisions of General Obligations Law Section 5-1311, as modified herein, shall apply to this transaction as if it were a sale of realty. For purposes of this paragraph, the term "Unit" includes builtin Personalty.

8.2 Destruction shall be deemed "material" under GOL 5-1311, if the reasonably estimated cost to restore the Unit shall exceed 5% of the Purchase Price.

8.3 In the event of any destruction of the Unit or the Premises, when neither legal title nor the possession of the Unit has been transferred to Purchaser, Seller shall give Notice of the loss to Purchaser ("Loss Notice") by the earlier of the date of Closing or 7 business days after the date of the loss.

8.4 If there is material destruction of the Unit without fault of Purchaser, this Contract shall be deemed canceled in accordance with ¶ 16.3, unless Purchaser elects by Notice to Seller to complete the purchase with an abatement of the Purchase Price; or

8.5 Whether or not there is any destruction of the Unit, if, without fault of Purchaser, more than 10% of the units in the Premises are rendered uninhabitable, or reasonable access to the Unit is not available, then Purchaser shall have the right to cancel this Contract in accordance with ¶ 16.3 by Notice to Seller.

8.6 Purchaser's Notice pursuant to ¶ 8.4 or ¶ 8.5 shall, be given within 7 business days following the giving of the Loss Notice except that if Seller does not give a Loss Notice, Purchaser's Notice may be given at any time at or prior to Closing

8.7 In the event of any destruction of the Unit, Purchaser shall not be entitled to an abatement of the Purchase Price (i) that exceeds the reasonably estimated cost of repair and restoration or (ii) for any loss that the Corporation is obliged to repair or restore; but Seller shall assign to Purchaser, without recourse, Seller's claim, if any, against the Corporation with respect to such loss.

**9 Closing Location**

The Closing shall be held at the location designated by the Corporation or, if no such designation is made, at the office of Seller's Attorney.

**10 Closing**

10.1 At Closing, Seller shall deliver or cause to be delivered:

10.1.1 Seller's certificate for the Shares duly endorsed for transfer to Purchaser or accompanied by a separate duly executed stock power to Purchaser, and in either case, with any guarantee of Seller's signature required by the Corporation;

10.1.2 Seller's counterpart original of the Lease, all assignments and assumptions in the chain of title and a duly executed assignment thereof to Purchaser in the form required by the Corporation;

10.1.3 FIRPTA documents required by ¶ 25;

10.1.4 keys to the Unit, building entrance(s), and, if applicable, garage, mailbox, storage unit and any locks in the Unit.

10.1.5 if requested, an assignment to Purchaser of Seller's interest in the Personalty and Included Interests.

10.1.6 any documents and payments to comply with ¶ 15.2

10.1.7 If Seller is unable to deliver the documents required in ¶ 10.1.1 or 10.1.2 then Seller shall deliver or cause to be delivered all documents and payments required by the Corporation for the issuance of anew certificate for the Shares or a new Lease.

10.2 At Closing, Purchaser shall:

10.2.1 pay the Balance in accordance with ¶ 2.2.2;

10.2.2 execute and deliver to Seller and the Corporation an agreement assuming the Lease, in the form required by the Corporation; and

10.2.3 if requested by the Corporation, execute and deliver counterparts of a new lease substantially the same as the Lease, for the balance of the Lease term, in which case the Lease shall be canceled and surrendered to the Corporation together with Seller's assignment thereof to Purchaser.

10.3 At Closing, the Parties shall complete and execute all documents necessary:

10.3.1 for Internal Revenue Service ("IRS") form 1099-S or other similar requirements;

10.3.2 to comply with smoke detector requirements and any applicable transfer tax filings; and

10.3.3 to transfer Seller's interest, if any, in and to the Personalty and Included Interests

10.4 Purchaser shall not be obligated to close unless, at Closing, the Corporation. delivers.

10.4.1 to Purchaser a new certificate for the Shares in the name of Purchaser; and

10.4.2 a written statement by an officer or authorized agent of the Corporation consenting to the transfer of the Shares and Lease to Purchaser and setting forth the amounts of and payment status of all sums owed by Seller to the Corporation, including Maintenance and any Assessments, and the dates to which each has been paid.

**11 Closing Fees, Taxes and Apportionments**

11. 1 At or prior to Closing,

11.1.1 Seller shall pay, if applicable:

11.1.1.1 the cost of stock transfer stamps, and

11.1.1.2 transfer taxes, except as set forth in ¶ 11.1.2 2

11.1.2 Purchaser shall pay, if applicable:

11.1.2.1 any fee imposed by the Corporation relating to Purchaser's financing; and

11 1.2.2 transfer taxes imposed by statute primarily on Purchaser (e g., the "mansion tax")

11.2 The Flip Tax, if any, shall be paid by the Party specified in ¶ 1.19.

11.3 Any fee imposed by the Corporation and not specified in this Contract shall be paid by the Party upon whom such fee is expressly imposed by the Corporation, and if no Party is specified by the Corporation, then such fee shall be paid by Seller.

11.4 The Parties shall apportion as of 11:59 P.M. of the day preceding the Closing, the Maintenance, and any other periodic charges due the Corporation (other than Assessments) and STAR Tax Exemption (if the Unit is the beneficiary of same), based on the number of the days in the month of Closing.

11.5 Assessments, whether payable in a lump sum or installments, shall not be apportioned, but shall be paid by the Party who is the owner of the Shares on the date specified by the Corporation for payment. Purchaser shall pay any installments payable after Closing provided Seller had the right and elected to pay the Assessment in installments.

11.6 Each Party shall timely pay any transfer taxes for which it is primarily liable pursuant to law by cashier's, official bank, certified, or attorney's escrow check. This ¶ 11.6 shall survive Closing.

11.7 Any computational errors or omissions shall be corrected within 6 months after Closing. This ¶ 11.7 shall survive Closing.

**12 Broker**

12.1 Each Party represents that such Party has not dealt with any person acting as a broker, whether licensed or unlicensed, in connection with this transaction other than the Broker(s) named in ¶ 1.5.

12.2 Seller shall pay the Broker's commission pursuant to a separate agreement. The Broker(s) shall not be deemed to be a third-party beneficiary of this Contract.

12.3 This ¶ 12 shall survive Closing, cancellation or termination of this Contract

**13 Defaults, Remedies and Indemnities**

13.1 In the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this Contract, retain the Contract Deposit as liquidated damages and, if applicable, Seller may enforce the indemnity in ¶ 13.3 as to brokerage commission or sue under ¶ 13.4. Purchaser prefers to limit Purchaser's exposure for actual damages to the amount of the Contract Deposit, which Purchaser agrees constitutes a fair and reasonable amount of compensation for Seller's damages under the circumstances and is not a penalty. The principles of real property law shall apply to this liquidated damages provision.

13.2 In the event of a default or misrepresentation by Seller, Purchaser shall have such remedies as Purchaser is entitled to at law or in equity, including specific performance, because the Unit and Shares thereof cannot be duplicated.

13.3 Subject to the provisions of ¶ 4.3, each Party indemnifies and holds harmless the other against and from any claim, judgment, loss, liability, cost or expense resulting from the indemnitor's breach of any of its representations or covenants stated to survive Closing, cancellation or termination of this Contract. Purchaser indemnifies and holds harmless Seller against and from any claim, judgment, loss, liability, cost or expense resulting from the Lease obligations accruing from and after the Closing. Each indemnity includes, without limitation, reasonable attorneys' fees and disbursements, court costs and litigation expenses arising from the defense of any claim and enforcement or collection of a judgment under this indemnity, provided the indemnitee is given Notice and opportunity to defend the claim. This ¶ 13.3 shall survive Closing, cancellation or termination of this Contract.

13.4 In the event any instrument for the payment of the Contract Deposit fails of collection, Seller shall have the right to sue on the uncollected instrument. In addition, such failure of collection shall be a default under this Contract, provided Seller gives Purchaser Notice of such failure of collection and, within 3 business days after Notice is given, Escrowee does not receive from Purchaser an unendorsed good certified check, bank check or immediately available funds in the amount of the uncollected funds. Failure to cure such default shall entitle Seller to the remedies set forth in Paragraph 13.1 and to retain all sums as may be collected and/or recovered.

**14 Entire Agreement; Modification**

14.1 All prior oral or written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract, and with the Escrowee as to ¶ 27, are merged in this Contract, which alone fully and completely expresses the Parties' and Escrowee's agreement.

14.2 The Attorneys may extend in writing any of the time limitations stated in this Contract. Any other provision of this Contract may be changed or waived only in writing signed by the Party or Escrowee to be charged.

**15 Removal of Liens and Judgments**

15.1 Purchaser shall deliver or cause to be delivered to Seller or Seller's Attorney, not less than 10 calendar days prior to the Scheduled Closing Date a Lien and Judgment search, except that Liens or Judgments first disclosed in a continuation search shall be reported to Seller within 2 business days after receipt thereof, but not later than the Closing. Seller shall have the right to adjourn the Closing pursuant to ¶ 16 to remove any such Liens and Judgments. Failure by Purchaser to timely deliver such search or continuation search shall not constitute a waiver of Seller's covenants in ¶ 4 as to Liens and Judgments. However, if the Closing is adjourned solely by reason of untimely delivery of the Lien and Judgment search, the apportionments under Paragraph 11.3 shall be made as of 11:59 P.M. of the day preceding the Scheduled Closing Date in ¶ 1.15.

15.2 Seller, at Seller's expense, shall obtain and deliver to the Purchaser the documents and payments necessary to secure the release, satisfaction, termination and discharge or removal of record of any Liens and Judgments. Seller may use any portion of the Purchase Price for such purposes.

15.3 This ¶ 15 shall survive Closing.

**16 Seller's Inability**

16.1 If Seller shall be unable to transfer the items set forth in ¶ 2.1 in accordance with this Contract for any reason other than Seller's failure to make a required payment or other willful act or omission, then Seller shall have the right to adjourn the Closing for periods not exceeding 60 calendar days in the aggregate, but not extending beyond the expiration of Purchaser's Loan Commitment Letter, if ¶ 1.20.1 or 1.20.2 applies.

16.2 If Seller does not elect to adjourn the Closing or (if adjourned) on the adjourned date of Closing Seller is still unable to perform, then unless Purchaser elects to proceed with the Closing without abatement of the Purchase Price, either Party may cancel this Contract on Notice to the other Party given at any time thereafter.

16.3 In the event of such cancellation, the sole liability of Seller shall be to cause the Contract Deposit to be refunded to Purchaser and to reimburse Purchaser for the actual costs incurred for Purchaser's lien and title search, if any.

**17 Notices and Contract Delivery**

17.1 Any notice or demand ("Notice") shall be in writing and delivered either by hand, overnight delivery or certified or registered mail, return receipt requested, to the Party and simultaneously, in like manner, to such Party's Attorney, if any, and to Escrowee at their respective addresses or to such other address as shall hereafter be designated by Notice given pursuant to this ¶ 17.

17.2 The Contract may be delivered as provided in ¶ 17.1 or by ordinary mail.

17.3 The Contract or each Notice shall be deemed given and received.

17.3.1 on the day delivered by hand;

17.3.2 on the business day following the date sent by overnight delivery;

17.3.3 on the 5th business day following the date sent by certified or registered mail; or

17.3.4 as to the Contract only, 3 business days following the date of ordinary mailing.

17.4 A Notice to Escrowee shall be deemed given only upon actual receipt by Escrowee.

17.5 The Attorneys are authorized to give and receive any Notice on behalf of their respective clients

17.6 Failure or refusal to accept a Notice shall not invalidate the Notice

17.7 Notice pursuant to ¶¶ 2.2.2 and 13.4 may be delivered by confirmed facsimile to the Party's Attorney and shall be deemed given when transmission is confirmed by sender's facsimile machine.

**18 Financing Provisions**

18.1 The provisions of ¶¶ 18.1 and 18.2 are applicable only if ¶ 1.20.1 or 1.20.2 applies.

18.1.1 An "Institutional Lender" is any of the following that is authorized under Federal or New York State law to issue a loan secured by the Shares and Lease and is currently extending similarly secured loan commitments in the county in which the Unit is located: a bank, savings bank, savings and loan association, trust company, credit union of which Purchaser is a member, mortgage banker, insurance company or governmental entity.

18.1.2 A "Loan Commitment Letter" is a written offer from an Institutional Lender to make a loan on the Financing Terms (see ¶ 1.21) at prevailing fixed or adjustable interest rates and on other customary terms generally being offered by Institutional Lenders making cooperative share loans. An offer to make a loan conditional upon obtaining an appraisal satisfactory to the Institutional Lender shall not become a Loan Commitment Letter unless and until such condition is met. An offer conditional upon any factor concerning Purchaser (e.g. sale of current home, payment of outstanding debt, no material adverse change in Purchaser's financial condition, etc.) is a Loan Commitment Letter whether or not such condition is met. Purchaser accepts the risk that, and cannot cancel this Contract if, any condition concerning Purchaser is not met.

18.2 Purchaser, directly or through a mortgage broker registered pursuant to Article 12-D of the Banking Law, shall diligently and in good faith:

18.2.1 apply only to an Institutional Lender for a loan on the Financing Terms (see ¶ 1.21) on the form required by the Institutional Lender containing truthful and complete information, and submit such application together with such documents as the Institutional Lender requires, and pay the applicable fees and charges of the Institutional Lender, all of which shall be performed within 5 business days after the Delivery Date;

18.2.2 promptly submit to the Institutional Lender such further references, data and documents requested by the Institutional Lender; and

18.2.3 accept a Loan Commitment Letter meeting the Financing Terms and comply with all requirements of such Loan Commitment Letter (or any other loan commitment letter accepted by Purchaser) and of the Institutional Lender in order to close the loan; and

18.2.4 furnish Seller with a copy of the Loan Commitment Letter promptly after Purchaser's receipt thereof.

18.2.5 Purchaser is not required to apply to more than one Institutional Lender.

18.3 If Paragraph 1.20.1 applies, then

18.3.1 provided Purchaser has complied with all applicable provisions of ¶ 18.2 and this ¶ 18.3, Purchaser may cancel this Contract as set forth below, if

18.3.1.1 any Institutional Lender denies Purchaser's application in writing prior to the Loan Commitment Date (see Paragraph 1.21); or

18.3.1.2 a Loan Commitment Letter is not issued by the Institutional Lender on or before the Loan Commitment Date, or

18.3.1.3 any requirement of the Loan Commitment Letter other than one concerning Purchaser is not met (e.g. failure of the Corporation to execute and deliver the Institutional Lender's recognition agreement or other document, financial condition of the Corporation, owner occupancy quota, etc.); or

18.3.1.4 (i) the Closing is adjourned by Seller or the Corporation for more than 30 business days from the Scheduled Closing Date and (ii) the Loan Commitment Letter expires on a date more than 30 business days after the Scheduled Closing Date and before the new date set for Closing pursuant to this ¶ and (iii) Purchaser is unable in good faith to obtain from the Institutional Lender an extension of the Loan Commitment Letter or a new Loan Commitment Letter on the Financing Terms without paying additional fees to the Institutional Lender, unless Seller agrees, by Notice to Purchaser within 5 business days after receipt of Purchaser's Notice of cancellation on such ground, that Seller will pay such additional fees and Seller pays such fees when due. Purchaser may not object to an adjournment by Seller for up to 30 business days solely because the Loan Commitment Letter would expire before such adjourned Closing date.

18.3.2 Purchaser shall deliver Notice of cancellation to Seller within 5 business days after the Loan Commitment Date if cancellation is pursuant to ¶ 18.3.1.1 or 18.3.1.2 and on or prior to the Scheduled Closing Date if cancellation is pursuant to ¶ 18.3.1.3 or 18.3.1.4.

18.3.3 If cancellation is pursuant to Paragraph 18.3. 1. 1, then Purchaser shall deliver to Seller, together with Purchaser's Notice, a copy of the Institutional Lender's written denial of Purchaser's loan application. If cancellation is pursuant to ¶ 18.3.1.3, then Purchaser shall deliver to Seller together with Purchaser's Notice evidence that a requirement of the Institutional Lender was not met.

18.3.4 Seller may cancel this Contract by Notice to Purchaser, sent within 5 days after the Loan Commitment Date, if Purchaser shall not have sent by then either (i) Purchaser's Notice of cancellation or (ii) a copy of the Loan Commitment Letter to Seller, which cancellation shall become effective if Purchaser does not deliver a copy of such Loan Commitment Letter to Seller within 10 business days after the Loan Commitment Date.

18.3.5 Failure by either Purchaser or Seller to deliver Notice of cancellation as required by this ¶ 18.3 shall constitute a waiver of the right to cancel under this ¶ 18.3.

18.3.6 If this Contract is canceled by Purchaser pursuant to this ¶ 18.3, then thereafter neither Party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Contract Deposit shall be promptly refunded to Purchaser and except as set forth in ¶ 12. If this Contract is canceled by Purchaser pursuant to ¶ 18.3.1.4, then Seller shall reimburse Purchaser for any non-refundable financing and inspection expenses and other sums reimbursable pursuant to ¶ 16.

18.3.7 Purchaser cannot cancel this Contract pursuant to 18.3.1.4 and cannot obtain a refund of the Contract Deposit if the Institutional Lender fails to fund the loan:

18.3.7.1 because a requirement of the Loan Commitment Letter concerning Purchaser is not met (e.g., Purchaser's financial condition or employment status suffers an adverse change; Purchaser fails to satisfy a condition relating to the sale of an existing residence, etc.) or

18.3.7.2 due to the expiration of a Loan Commitment Letter issued with an expiration date that is not more than 30 business days after the Scheduled Closing Date.

**19 Singular/Plural and Joint/Several**
The use of the singular shall be deemed to include the plural and vice versa, whenever the context so requires. If more than one person constitutes Seller or Purchaser, their obligations as such Party shall be joint and several.

**20 No Survival**
No representation and/or covenant contained herein shall survive Closing except as expressly provided. Payment of the Balance shall constitute a discharge and release by Purchaser of all of Seller's obligations hereunder except those expressly stated to survive Closing.

**21 Inspections**
Purchaser and Purchaser's representatives shall have the right to inspect the Unit within 48 hours prior to Closing, and at other reasonable times upon reasonable request to Seller

**22 Governing Law and Venue**

This Contract shall be governed by the laws of the State of New York without regard to principles of conflict of laws. Any action or proceeding arising out of this Contract shall be brought in the county or Federal district where the Unit is located and the Parties hereby consent to said venue.

**23 No Assignment by Purchaser; Death of Purchaser**
23.1 Purchaser may not assign this Contract or any of Purchaser's rights hereunder. Any such purported assignment shall be null and void.

23.2 This Contract shall terminate upon the death of all persons comprising Purchaser and the Contract Deposit shall be refunded to the Purchaser. Upon making such refund and reimbursement, neither Party shall have any further liability or claim against the other hereunder, except as set forth in ¶ 12.

**24 Cooperation of Parties**
24.1 The Parties shall each cooperate with the other, the Corporation and Purchaser's Institutional Lender and title company, if any, and obtain, execute and deliver such documents as are reasonably necessary to consummate this sale.

24.2 The Parties shall timely file all required documents in connection with all governmental filings that are required by law. Each Party represents to the other that its statements in such filings shall be true and complete. This ¶ 24.2 shall survive Closing.

**25 FIRPTA**
The parties shall comply with IRC §§ 897, 1445 and the regulations thereunder as same may be amended ("FIRPTA"). If applicable, Seller shall execute and deliver to purchaser at Closing a Certification of Non-Foreign Status ("CNS") or deliver a Withholding Certificate from the IRS. If Seller fails to deliver a CNS or a Withholding Certificate, Purchaser shall withhold from

the Balance, and remit to the IRS, such sum as may be required by law. Seller hereby waives any right of action against Purchaser on account of such withholding and remittance. This ¶ 25 shall survive Closing.

**26 Additional Requirements**
26.1 Purchaser shall not be obligated to close unless all of the following requirements are satisfied at the time of the Closing:

26.1.1 the Corporation is in good standing;

26.1.2 the Corporation has fee or leasehold title to the Premises, whether or not marketable or insurable; and

26.1.3 there is no pending in rem action, tax certificate/lien sale or foreclosure action of any underlying mortgage affecting the Premises.

26.2 If any requirement in ¶ 26.1 is not satisfied at the time of the Closing, Purchaser shall give Seller Notice and if the same is not satisfied within a reasonable period of time thereafter, then either Party may cancel this Contract (pursuant to ¶ 16.3) by Notice.

**27 Escrow Terms**
27.1 The Contract Deposit shall be deposited by Escrowee in an escrow account as set forth in ¶ 1.24 and the proceeds held and disbursed in accordance with the terms of this Contract. At Closing, the Contract Deposit shall be paid by Escrowee to Seller. If the Closing does not occur and either Party gives Notice to Escrowee demanding payment of the Contract Deposit, Escrowee shall give prompt Notice to the other Party of such demand. If Escrowee does not receive a Notice of objection to the proposed payment from such other Party within 10 business days after the giving of Escrowee's Notice, Escrowee is hereby authorized and directed to make such payment to the demanding party. If Escrowee does receive such a Notice of objection within said period, or if for any reason Escrowee in good faith elects not to make such payment, Escrowee may continue to hold the Contract Deposit until otherwise directed by a joint Notice by the Parties or a final, non-appealable judgment, order or decree of a court of competent jurisdiction. However, Escrowee shall have the right at any time to deposit the Contract Deposit and the interest thereon, if any, with the clerk of a court in the county as set forth in ¶ 22 and shall give Notice of such deposit to each Party. Upon disposition of the Contract Deposit and interest thereon, if any, in accordance with this ¶ 27, Escrowee shall be released and discharged of all escrow obligations and liabilities.

27.2 The Party whose Attorney is Escrowee shall be liable for loss of the Contract Deposit. If the Escrowee is Seller's attorney, then Purchaser shall be credited with the amount of the contract Deposit at Closing.

27.3 Escrowee shall serve without compensation. Escrowee is acting solely as a stakeholder at the Parties' request and for their convenience. Escrowee shall not be liable to either Party for any act or omission unless it

involves bad faith, willful disregard of this Contract or gross negligence. In the event of any dispute, Seller and Purchaser shall jointly and severally (with right of contribution) defend (by attorneys selected by Escrowee), indemnify and hold harmless Escrowee from and against any claim, judgment, loss, liability, cost and expenses incurred in connection with the performance of Escrowee's acts or omissions not involving bad faith, willful disregard of this Contract or gross negligence. This indemnity includes, without limitation, reasonable attorneys' fees either paid to retain attorneys or representing the fair value of legal services rendered by Escrowee to itself and disbursements, court costs and litigation expenses.

27.4 Escrowee acknowledges receipt of the Contract Deposit, by check subject to collection.

27.5 Escrowee agrees to the provisions of this ¶ 27.

27.6 If Escrowee is the Attorney for a Party, Escrowee shall be permitted to represent such Party in any dispute or lawsuit.

27.7 This ¶ 27 shall survive Closing, cancellation or termination of this Contract.

**28 Margin Headings**
The margin headings do not constitute part of the text of this Contract.

**29 Miscellaneous**
This Contract shall not be binding unless and until Seller delivers a fully executed counterpart of this Contract to Purchaser (or Purchaser's Attorney) pursuant to ¶ 17.2 and 17.3. This Contract shall bind and inure to the benefit of the Parties hereto and their respective heirs, personal and legal representatives and successors in interest.

**30 Lead Paint**
If applicable, the complete and fully executed Disclosure of Information on Lead Based Paint and or Lead-Based Paint Hazards is attached hereto and made a part hereof.

# In Witness Whereof, the Parties hereto have duly executed this Contract as of the date first above written

ESCROW TERMS AGREED TO:            SELLER:            PURCHASER:

ESCROWEE

_____            _____

~~Suggested Purchaser's representations for use when applicable:~~

~~31 Purchaser's Additional Representations and Covenants~~
~~31.1.1 Supplementing ¶ 4.2 of the Contract, Purchaser also represents and covenants that:~~
~~31.1.1.1 Purchaser has, and will at Closing have, available unencumbered cash and cash equivalents (including publicly traded securities) in a sum at least equal to (and having a then current value of) the Balance; and~~
~~31.1.2 Purchaser has, and will at and immediately following the Closing have, a positive net worth.~~
~~31.2 the Maintenance and the monthly amount of the Assessment (if any) do not aggregate more than 25% of the current total gross monthly income of the individuals comprising the Purchaser;~~

~~31.3 (if ¶ 1.20.1 or ¶ 1.20.2 applies) the monthly debt service (interest and amortization of principal, if any) of the proposed financing, together with the Maintenance and the monthly Assessment amount (if any), do not aggregate more than 33% of said current total gross monthly income.~~
~~32 Supplementing paragraph 4.: 1. Seller has no actual knowledge of a material default or condition which the Lessee is required to cure under the Lease and which remains uncured. If, prior to Closing, Seller acquires knowledge of a such default or condition which the Lessee would be required to cure, then Seller shall cure same at or prior to Closing. This provision shall not survive closing.~~

~~The Parties have duly executed this Rider as of the same date as the Contract.~~

_____            _____
~~SELLER:~~            ~~PURCHASER:~~
_____            _____

## In Witness Whereof,

ESCROW TERMS AGREED TO                    SELLER                    PURCHASER

ESCROW

*33*

**RIDER TO CONTRACT OF SALE DATED OCTOBER   , 2017 BETWEEN
ANTHONY JAMES BRIATICO, SELLER, AND▉▉▉▉▉▉▉▉▉▉▉▉
PURCHASER; RE: <u>433 WEST 34TH STREET, NEW YORK, NY UNIT 13H</u>**

The following paragraphs 33 through 39 are hereby added to the foregoing contract in amplification, supplementation and modification of the printed provisions thereof. In case there is any conflict or inconsistency between the printed provisions of the contract and any provisions of the Rider, the provisions of this Rider shall control.

33.    Except as set forth in the foregoing Contract and herein, Seller is not obligated to install or replace any equipment or appliances in theUnit or otherwise make any repairs, improvements or decorations in the Unit or its equipment, appliances and fixtures and Purchaser agrees they are accepting the Unit in its present "as is" condition.

34.    Seller has not made and does not make any representations as to the physical condition, income, expense, taxes, operation or any other matter affecting or related to the Unit or the building except as expressly set forth herein. Seller is not liable or bound in any manner by any verbal or written statements, representations or information pertaining to the Unit or the building furnished by any real estate broker, agent, employee, servant or other person unless the same specifically is set forth in writing herein. Purchaser acknowledges having entered into this agreement without relying upon any promises, statements, estimates, representations, warranties, conditions or other inducements, express or implied, oral or written, not set forth herein.

35.    The acceptance of the shares and the assumption of the Lease by Purchaser shall be deemed full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement, except those expressly provided to survive closing. If Seller's certificate for the Shares or the Lease are lost or unavailable at Closing, Purchaser shall accept at Closing such replacement Shares or Lease as may be issued by the Corporation.

36.    Purchaser represents and warrants that:

       (i) Purchaser has, to their actual knowledge, against either of them no outstanding judgment or tax lien;

       (ii) Purchaser is acquiring the Shares and Lease for the sole purpose of Purchaser's occupancy of the Unit as a residential dwelling by one or more of the persons constituting Purchaser; and

       (iii) To the best of their knowledge, the financial information provided in connection with their offer is true and accurate.

37.  In the event Purchaser receives a credit on a future maintenance bill or check from the Corporation or Managing Agent in connection with the reduction of real estate taxes, which are attributed to a period of time during which Seller was the owner of the Unit, Purchaser agrees to apportion same and promptly deliver a check to Seller for the portion of the credit applicable to Seller's period of ownership, unless such credit or check is offset by a corresponding assessment. In the event an assessment is imposed by the Board to recapture any real estate tax abatements earned by the Seller for any period prior to closing, Seller shall promptly pay to Purchaser any such amount. This paragraph shall survive closing for 1 year.

38.  Seller shall not be required to repair any ordinary nail sized holes hole, remaining in any wall which results from the removal of anything which had been affixed to, or hung upon, the walls of the Unit.

39.  This contract may be executed in any number of counterparts with each counterpart being an original Instrument and all such counterparts together constituting one and the same agreement. The parties may execute this contract via facsimile signature or signature transmitted as a PDF with the same binding effect as original signatures.

40.  The parties acknowledge that the sale is subject to bankruptcy court approval.


SELLER:                                              PURCHASER


_____                    _____
ANTHONY JAMES BRIATICO                  APRIL J. SEIGEL

37. In the event Purchaser receives a credit on a future maintenance bill or check from the Corporation or Managing Agent in connection with the reduction of real estate taxes, which are attributed to a period of time during which Seller was the owner of the Unit, Purchaser agrees to apportion same and promptly deliver a check to Seller for the portion of the credit applicable to Seller's period of ownership, unless such credit or check is offset by a corresponding assessment. In the event an assessment is imposed by the Board to recapture any real estate tax abatements earned by the Seller for any period prior to closing, Seller shall promptly pay to Purchaser any such amount. This paragraph shall survive closing for 1 year.

38. Seller shall not be required to repair any ordinary nail sized holes hole, remaining in any wall which results from the removal of anything which had been affixed to, or hung upon, the walls of the Unit.

39. This contract may be executed in any number of counterparts with each counterpart being an original Instrument and all such counterparts together constituting one and the same agreement. The parties may execute this contract via facsimile signature or signature transmitted as a PDF with the same binding effect as original signatures.

40. The parties acknowledge that the sale is subject to bankruptcy court approval.

SELLER:                                    PURCHASER

ANTHONY JAMES BRIATICO

**Rider to Contract of Sale
by and between
Anthony James Briatico, (Seller)
and April J. Siegel, (Purchaser)
for Cooperative Apartment 13H, at 433 West 34th Street, New York, NY**

R1.    In the event of any inconsistency between the terms of this Rider and those contained in the printed form of Contract or the Rider to Contract of Sale, the terms of this Rider shall govern. All references to "this Contract" herein shall be deemed to mean and refer to the printed form of Contract of Sale and each Rider attached thereto, collectively.

R2.    Paragraph 4.1 is hereby amended by adding the following subparagraphs immediately after paragraph 4.1.9.5:

    4.1.10: Seller represents that Seller has not complained in writing about chronic noises, smells or other offensive conduct on the part of other tenants/shareholders in the Premises within the past twelve (12) months.

    4.1.11: Seller represents that to the best of Seller's knowledge there are currently no leaks or water infiltration affecting the Unit from other units or common areas of the building and there have not been any leaks, water infiltration or toxic mold into the Unit in the last twelve (12) months.

    4.1.12: Seller represents that Seller has not complained about bed bugs in the Premises within the past twelve (12) months.

    4.1.13: Seller represents that the Seller has not complained about smoke and/or smoking emanating from other apartments, common areas and/or from any retail space on the ground floor within the past twelve (12) months.

R3.    Seller represents that as of the date of this Contract Seller has not received any notice and Seller has no knowledge of any pending or threatened litigation or claim against or concerning Seller, the Unit, the Shares, the Lease, and/or the Property included in this sale.

R4.    Seller represents that to the best of Seller's knowledge that any alterations or additions made to the Unit were done in compliance with the rules and regulations of the Corporation, and all proper permits, approvals, signoffs, etc. were received by the proper NYC governmental agency. To Seller's the best of Seller's knowledge, there are no claims by the Corporation or any governmental authority for failure to comply with the rules of the Corporation or any applicable law regarding alteration of the Unit. This provision shall survive closing.

R5.    Supplementing Paragraph 4.1.5 of the printed portion of this Contract, Seller shall promptly after actual receipt thereof, deliver to Purchaser's attorney by fax or email copies of any written notices from the Corporation or otherwise indicating: (i) any increase in the amount of monthly maintenance payments as set forth in Paragraph 1.13 of the printed portion of this Contract; (ii)

any intended or proposed assessment; (iii) any intended or proposed adoption of a "Flip Tax" or any other transfer fee charged by the Corporation or its Managing Agent; and (iv) any proposed amendment or modification of the Lease, the Certificate of Incorporation of the Corporation or the By-Laws thereof.  Any notice delivered pursuant to this paragraph will be provided for informational purposes only and shall not entitle either party to cancel this contract or afford the Purchaser the right to seek any closing cost adjustment or Purchase Price abatement.  The failure of Seller to provide any such notice shall not be deemed a default hereunder.

R6.    It shall be a condition of the closing that at the time of Closing gas and electric service shall be provided by the appropriate utility company to the Unit and shall not be interrupted or disrupted for any reason within Seller's control.

R7.    Supplementing Paragraph 7.1, Seller represents that upon closing, in addition to all appliances, the electrical, plumbing, heating, air conditioning systems, as well as all electrical outlets and switches, to the extent that they are the responsibility of the Seller to maintain, shall be in working order.

R8.    Seller to the best of their knowledge represents that Seller knows of no damage to the floors that may be concealed under carpeting or furnishings, and knows of no damaged walls concealed behind furniture or artwork in the Unit, normal wear and tear excepted.

R9.    Sellers represents that at closing, to the extent in Seller's possession, if any, Seller will give Purchaser any manuals and/or assign to Purchaser any transferable warranties in Seller's possession as to the Unit, fixtures or personal property therein.

R10.    Seller shall permit Purchaser, Purchaser's architects, engineers, decorators, appraisers, and contractors access to the Unit from time to time prior to Closing, at reasonable times and upon reasonable notice by appointment with and in the presence of a Broker, a total of three (3) times and at least one (1) additional time during the 24-hour period preceding the closing.

R11.    Seller agrees to indemnify and hold Purchaser harmless from and against all loss, cost, damage and expense (including reasonable attorneys' fees and expenses) that Purchaser may incur by reason of Seller's failure to promptly file or pay when due any New York City Real Property Transfer Tax or New York State Real Estate Transfer Tax.  The provisions of this Paragraph shall survive Closing.

R12.    The "pre-printed" portion of this Contract is intended to be identical to the form approved by the Committee on Real Property Section of the New York State Bar Association and/or the Committee on Cooperatives and Condominiums (if applicable) of the Association of the Bar of the City of New York and New York County Lawyers Association and any deviation from that approved form of contract (other than options provided for in the approved form, obvious cross-outs on the approved form, obvious hand-marked changes to the approved form, and changes approved by both parties in subsequent Riders), whether intentional or unintentional, shall be disregarded.

R13.    Supplementing paragraph 7.1, at the Closing, Seller shall also deliver a properly completed

and executed Smoke Alarm Affidavit pursuant to the Executive Law §378.5, which Purchaser also shall execute and which shall be filed with the New York City Real Property Transfer Tax Return. If a smoke alarm or alarms must be installed to make the statements in the Smoke Alarm Affidavit true, Seller shall install such smoke alarm(s) prior to closing.  Further supplementing paragraph 7.1 at the Closing, Seller shall also deliver a properly completed and executed Carbon Monoxide Affidavit.  If a carbon monoxide detector or detectors must be installed to make the statements in the Carbon Monoxide Affidavit true, Seller shall install such carbon monoxide detector(s) prior to Closing.

R14.    Delivery of a lien search by Purchaser's Attorney to Seller's attorney by either nationally recognized overnight courier or by Electronic Mail, with receipt acknowledged, shall constitute notice of Purchaser's objections to title.

R15.    In the event that the Corporation imposes an Assessment to offset any Coop Abatement credit received from New York City and the Unit is not entitled to the full Abatement credit as a result of the Unit not being used as the Seller's primary residence, then Seller shall reimburse Purchaser for the difference between the amount of the Assessment and the credit actually received that is attributable to the time period of Seller's ownership. Seller also agrees to pay any reverse tax abatements attributable to the period of the Seller's ownership of the Unit. This paragraph shall survive closing for eighteen months.

R16.    Parties hereby designate their respective attorneys to receive notice on their behalf and to execute any notice, extension, cancellation, amendment or adjournments with the same force and effect as if signed by the parties themselves.

R17.    As required under the recently enacted Truth In Lending Act and Real Estate Settlement Procedures Act, which took effect on October 3, 2015, the Seller acknowledges that the Purchaser's lender is required to deliver a closing disclosure to Purchaser at least three (3) business days before the closing and in practice may require closing figures from Seller and Purchaser seven (7) to ten (10) days in advance of closing.  Seller agrees to cooperate with Purchaser and Purchaser's lender by responding timely to requests for adjustments, payoff figures, check request and other figures required by Purchaser's lender or title company in order to complete a closing disclosure for any scheduled closing.  The parties agree that any closing disclosure that was delayed by a managing agent's failure to timely provide closing figures and resulted in a delay of Purchaser's lender to timely issue a closing disclosure for a scheduled closing shall not be considered a default of Purchaser. Seller shall cooperate with Purchaser's lender by signing any documents reasonably or customarily requested by Purchaser's lender in order to close.

R18.    Notwithstanding anything to the contrary in the Contract documents, if legal proceedings become necessary to enforce any of the terms of this Contract, the prevailing party shall be entitled to recover the costs of such legal proceeds including, but not limited to, reasonable attorneys' fees.

**THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.**

In Witness Whereof, the parties hereto have duly executed this Rider to Contract.

Seller:                                                   Purchaser:

_____                                _____
Anthony James Briatico                                   April J. Siegel

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.

In Witness Whereof, the parties hereto have duly executed this Rider to Contract.

Seller:                                        Purchaser:

Anthony James Briatico                         April J. Siegel